FANNY P. SPAULDING ET AL. *v.* L. A. DREW ET AL.

[IN CHANCERY.]

*Married Woman.*

The oratrix owned real estate covered by mortgage, with a decree of foreclosure pend-
ing. She and her husband deeded it to two of the defendants, with an agree-
ment *with the husband alone,* that they were to pay the decree, and when the
property was sold the proceeds were to be applied to pay the amount of the de-
cree, to pay for the care and management of the property, and an indebtedness
due from the husband to one of the defendants. The wife did not know what
contract had been made with the defendants except as she was informed by her
husband, who procured the deed to be executed and delivered it. She entrusted
him with her title deed, and understood that whatever arrangement was to be
made with the defendants in relation to the property was to be made by him.
*Held,* that the proceeds of the real estate should be applied *in accordance with the
husband's contract;* that the rule applies that where one of two innocent par-
ties must suffer by the fraud of a third, he who has reposed a trust in the fraud-
ulent agent ought to bear the loss.

BILL in Chancery. Heard September Term, 1881, Chittenden
County. ROYCE, Chancellor, decreed *pro forma* that the bill
should be dismissed.

*W. L. Burnap* and *Hard & Safford,* for the defendants.

Whatever was coming to the wife after paying the decree was a
chose in action. Schouler Hus. & Wife, 155; *Johnson* v. *Ben-
nett,* 39 Barb. 237; *Plumur* v. *Jarman,* 44 Md. 632; Smilie's
Estate, 22 Penn. St. 130. The chose in action of the wife would
fully vest in the husband upon his reducing it to possession. His
agreement would perfect his control over the property, and upon
their receipt of the avails of the premises, and his subsequent di-
rection, as to the appropriation thereof, would reduce her chose
in action to his possession, and effectually deprive her of all in-
terest in the fund. 2 Atk. 208; *Bosoil* v. *Brauder,* 1 P. Wms.
458; *Honner* v. *Morton,* 3 Russ. 65; *Dun* v. *Sargent,* 101 Mass.

336 ; *Alexander* v. *Chittenden*, 4 Allen, 342 ; *Pierce* v. *Thompson*, 17 Pick. 391 ; *Clapp* v. *Stoughton*, 10 Pick. 462 ; *State* v. *McClanachan*, 2 Gratt. 280 ; *Kesner* v. *Trigg*, 98 U. S. 54 ; *Ramsdell* v. *Craighill*, 9 Ohio, 149 ; *Dixon* v. *Dixon*, 18 Ib. 113 ; *Tuttle* v. *Fowler*, 22 Conn. 58 ; *Dardier* v. *Chapman*, 27 Eng. Rep. 667 ; Chitty Contracts (11 Am. Ed.), 225 ; 17 Vt. 190 ; 49 Vt. 63 ; 50 Wis. 200.

*Roberts & Roberts*, for the oratrix.

The fact that the husband of Mrs. Spaulding to a slight extent managed this property for her, and joined in the deed with her, would certainly not make him her agent to dispose of the proceeds in a way which she did not contemplate or consent to. Rob. Dig. p. 383, s. 53, and cases cited ; *Bent* v. *Bent*, 44 Vt. 555 ; *Cardell* v. *Ryder*, 35 Vt. 47 ; 44 Vt. 555.

The opinion of the court was delivered by

ROYCE, Ch. J. This bill is brought to compel an accounting for the money received for certain premises sold by the defendants Drew and Allen to Ira and William P. Russell and Asa B. Witherell on the 28th of April, 1874. The premises were deeded to the oratrix, Fanny P. Spaulding, wife of Milton R. Spaulding, in 1864, and the title remained in her until it was conveyed by the joint deed of herself and husband to the defendants Drew and Allen, on the 10th day of April, 1872. On the 17th of December, 1868, the said Fanny P. and Milton R. executed a mortgage of said premises to Thomas C. Hill to secure the payment of notes amounting to $3000 executed by Milton R. Spaulding. Hill obtained a decree of foreclosure of said mortgage at the April Term of Chittenden County Court, 1871, which was running at the time the title was conveyed to the defendants Drew and Allen ; and it is agreed that the parties to the deed to Drew and Allen understood at the time it was executed and delivered, that Drew and Allen were to pay that decree, and when the premises were sold they were to reimburse themselves out of the proceeds. The orators claim that Drew and Allen should account for what they received upon the sale of the premises over and above what they

paid on said decree; Drew and Allen claim that they have fully accounted for such surplus by the application of a part of it to the payment of a debt due from Milton R. Spaulding on account of the purchase of some livery property, and of the rest of it in payment of their claim for services in the care of the premises while the title remained in them, and for their trouble and the risk they took in the management and disposition of them, and of the bal- ance, if anything remained after satisfying said claims, by apply- ing it on an indebtedness from Spaulding to the defendant Drew.

The evidence of Spaulding tends to show that he was never indebted for said livery property; that. there was an agreement between him and Drew that they would enter into the business of keeping a livery stable as partners, and that Drew purchased said livery property upon his own credit and put the same into the business as a portion of the capital to be furnished by him, and that they carried on said business after the purchase as partners and not otherwise; but upon a careful examination of the plead- ings and proofs we find that there was not any agreement made between the defendant Drew and Spaulding to enter into the bus- iness of keeping a livery stable as partners, and that they were not partners in said business; that the business was carried on by Spaulding alone and for his sole benefit; that Spaulding made the contract for the purchase of said livery property and for his sole benefit; that the payment of the purchase money for the same was secured by the note or endorsement of Drew and a lien upon the property was reserved to secure him against loss; that at the time of its purchase it was agreed between Drew and Spaulding that Spaulding should pay the note that was given for the prop- erty and save Drew harmless, and upon such payment the property should belong absolutely to Spaulding; that Spaulding took im- mediate possession of said property after its purchase and has ever since retained the possession and control of the same; and that the debt contracted for its purchase was the debt of Spaul- ding which it was his duty to pay.

We further find that the agreement between Spaulding and the defendants Drew and Allen was that Spaulding and his wife were to deed the premises to said Drew and Allen, and they were to

sell the same whenever they thought best, and from the avails
were to pay the Hill decree, the debt contracted for the purchase
of the livery property, and whatever remained was to be applied
in payment for the care, labor and risk of Drew and Allen in the
management and disposition of the property and upon the indebt-
edness of Spaulding to the defendant Drew.

. Drew and Allen realized from the sale of the premises, after
the payment of taxes and a rebate for rent, $5,140.51. They
paid the Hill decree, amounting to $3,774.84, and the note given
for the livery property, amounting to $1,111.73, which left a bal-
ance in their hands at that time of $231.25.

The arrangement to deed the premises to Drew and Allen, and
the terms upon which they were to take the deed and dispose of
the property and account for the same, were all made with Spaul-
ding. The oratrix, Fanny P., did not know what arrangement or
contract had been or was to be made with them except as she was
informed by her husband. Spaulding procured the deed to be
executed, and delivered it. Mrs. Spaulding entrusted her hus-
band with her title deed, and understood that whatever arrange-
ment was to be made with Drew and Allen in relation to the
property was to be made by him. They had no notice, except
such as the deed and the record furnished, that either Mrs. Spaul-
ding or her children had any interest in the property. They made
the arrangement and took the title, believing that it really be-
longed to Spaulding, and that he had the right to make the ar-
rangement and contract with them that was made.

It is now claimed by the orators that inasmuch as the legal ti-
tle to the premises was in the oratrix, Fanny P., and she had paid
for the same in part out of her separate estate, and no express au-
thority had been given by her to her husband to make any con-
tract in relation to the disposition to be made of the proceeds of
the premises, she is not bound by the contract made by him; and
that the defendants Drew and Allen should account for all of said
proceeds except what was required to pay the Hill decree.

Spaulding had authority to negotiate for the transfer of the ti-
tle of his wife and to provide for the payment of the Hill decree
out of the proceeds of the premises conveyed. Was his authority

limited to the performance of those acts ?   If Drew and Allen, at the time the deed was delivered, had paid Spaulding the full amount realized from the sale of the property, after deducting the amount required to pay the Hill decree, his wife would have been bound by such payment.   If they could have made the payment at that time, it is clear that they might make it at any subsequent time, unless they had notice not to make it.   The note given for the livery property was the debt of Spaulding,·and he might have used the money so received to pay that note.   Although that might have been a *misappropriation* of the money, as between him and his wife, she could not reclaim the money from the party to whom the payment was made unless he had notice that it belonged to her, or that she had some legal or equitable lien upon it.   Here, as we have seen, it was agreed between Spaulding and the defendants Drew and Allen that that debt should be paid out of the proceeds of the premises, and Drew being liable upon the note, they paid it directly instead of paying the money to Spaulding with which he might have paid it; so, as far as the rights of the orators are concerned, it stands for consideration as it would if the defendants had paid the money to Spaulding and he had used it in payment of the livery property debt.

In *Hern* v. *Nichols*, 1 Salk. 289, Lord HOLT said that where one of two innocent parties must suffer by the fraud or misconduct of a third, he who has reposed a trust and confidence in the fraudulent agent ought to bear the loss.   Spaulding had authority from his wife to negotiate with the defendants Drew and Allen in relation to the conveyance to them of the premises.   That authority would include the right to contract with them as to the terms upon which the conveyance should be made, and how and in what manner payments should be made.   The arrangement that was made constituted the consideration for their agreement to take the conveyance and upon which they did take it.   Mrs. Spaulding reposed the trust and confidence in her husband that is spoken of by Lord HOLT, to care for and protect her interest in the proceeds of the property, but ·instead of protecting her interest he made the agreement and arrangement that we have found he did make. From the authority confessedly conferred upon Spaulding, the de-

fendants Drew and Allen might well believe that he had authority to make the arrangement that he did make, and were legally justified in acting upon that belief. In deciding upon whom the loss must fall, the rule laid down by Lord Holt, and which has ever since been acknowledged law, settles it upon the party who reposed the trust and confidence in Spaulding.

From our examination of the case, as developed by the pleadings and proofs, we have failed to find that the orators, or either of them, have any equity that is superior to the claim that is made by the defendants Drew and Allen. The payment of the Hill decree and the debt incurred for the purchase of the livery property by the defendants Drew and Allen was, to that extent, a legal accounting by them for the proceeds of the premises conveyed to them by Spaulding and his wife. Drew and Allen should account for the balance of $231.25 that remained in their hands after paying said debts. The amount they are reasonably entitled to receive for their care, trouble and expense in the management and disposition of the premises should be ascertained and paid out of said $231.25, and what shall remain of said sum, if anything, should be applied on the indebtedness of Spaulding to Drew, if any such indebetedness should be found ; and if said sum shall not be required for either or both of said purposes, a decree should be entered for the orators for the amount that may so be found in their hands not so accounted for.

The *pro forma* decree dismissing the bill is reversed, and cause remanded with mandate.